UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-172-GWU

DIANE SNODGRASS,                                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-172  Diane Snodgrass

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

     Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

07-172  Diane Snodgrass

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the

3

07-172  Diane Snodgrass

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

07-172  Diane Snodgrass

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).   However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v.</u>
<u>Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Diane Snodgrass, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc/joint disease, chronic low back and neck pain syndrome with radiculopathy, and exogenous obesity.  (Tr. 16.).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform work existing in the economy, and accordingly, was not entitled to benefits.  (Tr. 19-24).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 41, high school education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional restrictions.  (Tr. 361).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb, stoop, crouch, kneel, and crawl; (3) could frequently balance; (4) could only occasionally push and pull with both the upper and lower extremities; (5) could only occasionally reach overhead; and (6) needed to avoid concentrated exposure to vibration, unprotected heights, and dangerous machinery.  (Id.).  The VE responded that such a person could return to the plaintiff's past work as an insurance customer service representative, and in the

7

07-172  Diane Snodgrass

alternative, named other jobs that such a person could perform and gave the numbers in which they existed in the regional and national economies.  (Tr. 361-2).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a herniated disc in her lower back which caused continuous pain in her back, legs, and hips, prevented her from lifting, from standing or sitting for long periods, and limited her bending and stooping.  (Tr. 70). At the administrative hearing, she also described stress resulting from her painful condition.  (Tr. 344).  She testified that her legs and feet would go numb while sitting, and estimated that she could sit 20 to 25 minutes and stand only slightly longer.  (Tr. 347).  She could lift ten pounds, but not all day long.  (Tr. 348).  She indicated that she did as many chores as she could, and, although she was currently living alone, liked to have someone around when she was getting in and out of the bathtub.  (Tr. 350).  Reports from friends indicated that they helped her with household chores, however, although the plaintiff did participate in some activities such as laundry, dishes, and vacuuming for only short periods.  (Tr. 96-104, 138-46).

Medical evidence in the transcript contains records from Dr. Brett Scott, a neurosurgeon, from 2001, indicating that the plaintiff had injured her back in 1995 but had a recent exacerbation beginning in April, 2001. (Tr. 157).  An MRI showed a herniated disc which compressed the S1 nerve root.  (Tr. 156, 158).  Dr. Scott's

examination showed a reduced range of motion, "minimal" weakness on the right side, a diminished right ankle reflex, and positive straight leg raising. (Tr. 156). The plaintiff did apparently return to work part-time by July, 2001. (Tr. 155). However, by December, Dr. Scott strongly suggested that she consider surgery to decompress the nerve root, and the plaintiff agreed. (Tr. 153). Later evidence suggests that the surgery did not take place because of problems with her worker's compensation. (Tr. 294).

Evidence closer in time to the plaintiff's SSI application, which was made on May 13, 2004 (Tr. 62-4), includes a new MRI showing a large central disc herniation at L5-S1 (Tr. 165). The physician who ordered the MRI, Dr. Scott Akers, found some lumbar spinal tenderness and slightly reduced right ankle reflex and right leg sensation, but recommended that she start low-impact aerobics, lose 20 pounds, and strengthen her abdominal muscles. (Tr. 161-3). She was referred to "aquatherapy." The only functional restriction noted was that she should avoid flexion from the waist. (Id.). The plaintiff testified that the aquatherapy helped her at first, but she discontinued it because she felt it was causing problems with her bladder. (Tr. 346).

The plaintiff underwent a consultative examination by Dr. Bobby J. Kidd in July, 2004 which showed no abnormalities. (Tr. 190-4). He appeared to be confused about whether the herniated disc was located in her neck or her back, however. (Tr. 194). He did not suggest functional restrictions. Office notes from

another physician, Dr. Maurice Michael Trivette, are largely illegible, but appear to indicate that the plaintiff had normal deep tendon reflexes and strength. (Tr. 240).

The plaintiff discontinued treatment with Dr. Akers and began seeing Dr. Ronnie Parker in November, 2004. His examination showed some tenderness, but initially, without the ability to review the 2004 MRI, he stated that there was no indication for the pain medication Lortab, and advised the plaintiff to lose weight. (Tr. 294-6).[1]  An office note may be missing at this point because Dr. Parker apparently did prescribe Lortab, after reviewing the new MRI, but the plaintiff described Lortab as providing a little improvement. (Tr. 291). Dr. Parker referred the plaintiff again to Dr. Scott, the neurosurgeon, for evaluation and treatment, and indicated that his patient's condition was deteriorating. (Tr. 292).

Finally, the plaintiff was consultatively examined by Dr. W. R. Stauffer in December, 2006. (Tr. 327). He also reviewed the May, 2004 MRI showing a herniated disc. (Id.). Dr. Stauffer's examination showed the plaintiff to be "severely obese," but in no acute distress. (Tr. 328). Her lumbar spine and left knee were tender, and straight leg raising was positive for leg and low back pain. (Tr. 329). Shoulder flexion and cervical spine ranges of motion were reduced, and the lumbar spine flexion was only 45 degrees, although Dr. Stauffer was unsure if the plaintiff was giving full effort. (Id.). She had a normal gait, although a slow walk, and there

---

[1]At the time, the plaintiff's weight was 263.4 pounds at a height of 68.5 inches. (Tr. 294).

were no abnormalities in motor strength, sensation, or reflexes.  (Id.).  The plaintiff complained of low back pain when walking on her heels and toes and could only squat one-half of the normal distance because of low back pain.  (Id.).  In conclusion, Dr. Stauffer stated that the plaintiff continued to have pain and decreased range of motion from a herniated disc but without real evidence of radiculopathy at the present time.  (Tr. 330).  He listed functional restrictions adopted by the ALJ and consistent with the factors given in the hypothetical question to the VE.  (Tr. 330-3).

The plaintiff's sole argument is that the ALJ performed an improper credibility assessment.   Specifically, she focuses on the ALJ's statement that "the undersigned does not afford full credibility to the claimant's subjective reports as her subjective reports and complaints are disproportionate to the objective findings of record." (Tr. 22).  The plaintiff suggests that it is error to base a credibility finding only on the lack of medical support for the severity of this claim.  An ALJ's credibility findings are entitled to great deference, see, e.g., Hardaway, 823 F.2d at 928; however, the Commissioner has set out detailed and in some respects complex standards which an ALJ must follow to assess a claimant's credibility.

Social Security Ruling 96-7p states that where, as here, an underlying medical impairment that can be reasonably expected to produce the individual's pain or other symptoms has been shown, but the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are

not substantiated by objective evidence, the adjudicator must make his credibility finding "based on a consideration of the entire case record." Id., p. 2. The factors to be considered include such items as the individual's daily activities, the location, duration, frequency, and intensity of pain, precipitating and aggravating factors, the type, dosage, effectiveness and side effects of medication taken, treatment other than medication received for relief of pain, and any measures the individual uses or has used to relieve pain or other symptoms. 20 C.F.R. § 404.929(c)(3). By use of the Duncan case, supra, "[t]he Sixth Circuit has enunciated this basic standard in a more succinct form." Felisky v. Bowen, 35 F.3d 1027, 1038 (6th Cir. 1994). The Felisky court emphasized that an opinion explicitly finding only that the content of the medical record insufficient to support subjective complaints is not consistent with the Commissioner's regulations. Id. at 1039, citing 20 C.F.R. § 404.1529(c)(2) ("however, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.") The Sixth Circuit noted that the ALJ is required to consider several other factors as outlined in the regulations including daily activities, location, duration, frequency, and intensity of pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medication, treatment other than medication, and any measures used by the claimant to relieve pain. Id. at 1039-40.

07-172  Diane Snodgrass

The ALJ's statement as quoted by the plaintiff clearly would not represent a correct credibility analysis because, as in <u>Felisky</u>, it "explicitly finds only the content of the medical record insufficient to support" the plaintiff's claims.  <u>Id.</u> at 1039.  The Commissioner suggests that the ALJ's decision considered other factors than the medical evidence, such as daily activities, medication, and treatment other than medications, and therefore did not solely rely on medical evidence.  However, to the extent that the ALJ did do so, many of his findings and conclusions are problematic.

For instance, while the ALJ mentioned reports filed by third parties which are highly supportive of the plaintiff's subjective complaints (Tr. 96-103, 138-46), he stated that "by virtue of an indicated familial relationship with the claimant, these individuals cannot be considered disinterested third-party witnesses whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (Tr. 22).  In fact, as the ALJ himself had noted earlier, the statements are by friends, not family members, and rejecting their opinions on the basis of a family relationship is groundless.  The ALJ also states that the most important reason for discounting their statements is that they were "not consistent with the preponderance of opinions and observations by medical doctors in this case."  (Id.).[2]  Thus, the ALJ again circles back to the medical evidence rather than the entire case record.

_____

[2]Additionally, the ALJ indicated that the third parties were not medically trained to make exacting observations, which is presumably true of every lay opinion.

13

07-172  Diane Snodgrass

Additionally, the ALJ apparently held an unsuccessful work attempt against the plaintiff, and criticized her for not making a concerted effort to lose weight, despite her testimony that she could not keep up with aquatherapy for urological reasons and the statements of her friends that she was unable to perform activities such as swimming and walking.  (Tr. 101, 139).  Although admitting that the plaintiff had a herniated disc, the ALJ was critical of the fact that surgical intervention had not been performed (Tr. 21), without apparently considering the offsetting factor that surgery had been recommended as long ago as 2001 and had been denied by the plaintiff's worker's compensation carrier, and that, more recently, her treating physician, Dr. Parker, had referred her back to a neurosurgeon for further evaluation of the herniated disc (Tr. 292).  The ALJ indicated that the treating physicians had expressed discomfort with the prescription of stronger pain medications (Tr. 22), but as described earlier, Dr. Parker prescribed Lortab in an apparently missing note, and in his most recent office note not only continued Lortab, but increased the plaintiff's dosage of Neurontin, and prescribed a new steroidal drug.  (Tr. 288).  These factors tend to support the plaintiff.  The ALJ concluded that the treating physicians indicated that the plaintiff's depressive and anxiety complaints had been addressed adequately with medication (Tr. 22), but in direct contradiction, Dr. Parker also described these problems as "deteriorated" and indicated that he was awaiting worker's compensation approval for the medication Paxil.  (Tr. 288, 291).

14

07-172  Diane Snodgrass

Therefore, under the limited circumstances of this particular set of facts, and in view of the holdings of the Sixth Circuit in <u>Felisky</u>, <u>supra</u>, the court finds that the ALJ's credibility analysis is not supported by substantial evidence.  A remand will be required for additional consideration on this point, during which the plaintiff may also submit any other available new evidence for consideration.

The decision will be remanded for further consideration.

This the 21st day of May, 2008.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

15